# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lourdes Sarmiento-Hernandez,      :
                  Petitioner     :
                                :
            v.          :   No. 1799 C.D. 2016
                                :   Submitted: December 6, 2017
Workers' Compensation Appeal    :
Board (Ace American Insurance     :
Company),                   :
               Respondent   :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge


OPINION BY
JUDGE COHN JUBELIRER           FILED: February 13, 2018

      Lourdes Sarmiento-Hernandez (Claimant) petitions for review of an October 12, 2016 Order of the Workers' Compensation Appeal Board (Board), which reversed a Workers' Compensation Judge's (WCJ) Decision to award Claimant unreasonable contest attorney's fees.[1] On June 27, 2014, Ace American Insurance Company (Employer) filed a Petition to Terminate Compensation Benefits (Termination Petition), asserting Claimant fully recovered from her work injury and was able to return to work without restriction as of June 2, 2014. Claimant denied that she fully recovered and filed a Petition to Review Compensation Benefits

---

[1] The Board Order affirmed the WCJ's Decision, granting Claimant benefits, in all other respects. Claimant's entitlement to benefits is not contested.

(Review Petition) on September 8, 2014, alleging the description of her injury was incorrect. Whether Employer's actions related to these two petitions were reasonable is the sole issue on appeal. We conclude they were and, accordingly, affirm.

## I.      Procedural and Factual History

Claimant sustained an injury to her right wrist at work on June 25, 2012. Employer issued a Notice of Compensation Payable (NCP), accepting the injury as a right wrist sprain, on October 18, 2012.

In 2013, prior to the filing of the instant petitions, Employer filed a Petition to Suspend Compensation Benefits (Suspension Petition). The Suspension Petition was resolved via a stipulation by the parties, which was adopted by a WCJ on May 22, 2014.[2] Prior to the entry of the stipulation, Employer deposed Thomas J. Gillon, M.D., Claimant's treating physician. Dr. Gillon diagnosed Claimant with right wrist symptomatic ulnar impaction,[3] triangular fibrocartilage complex (TFCC) tear, and extensor carpi ulnaris (ECU) tendinitis, which required surgery. Although the Suspension Petition was resolved via stipulation and Dr. Gillon's testimony was never admitted as part of that proceeding,[4] in her Review Petition, Claimant sought to have the NCP amended to include the conditions to which Dr. Gillon testified.

---

[2] The stipulation provided that, between October 21, 2013, and November 28, 2013, Claimant returned to work with no wage loss; between November 29, 2013, and March 24, 2014, Claimant received severance pay at her regular earnings after her position was eliminated; and beginning March 24, 2014, Claimant's total disability benefits were reinstated.

[3] Dr. Gillon explained that Claimant's ulna was longer than her radius, and that by surgically shortening the ulna, the pressure on one side of Claimant's wrist is offloaded. The condition is often congenital.

[4] Dr. Gillon's deposition was admitted at the hearing on the instant Petitions but for the limited purpose of showing Employer's contest was unreasonable.

2

A number of hearings were held on the Termination Petition and Review Petition, at which Employer presented the deposition and report of Pedro Beredjiklian, M.D.  The WCJ summarized Dr. Beredjiklian's testimony as follows:

[] On June 2, 2014, Dr. Beredjiklian performed an evaluation of Claimant at the request of the Employer/carrier.  Claimant dated her symptoms back to June 25, 2012 with no specific traumatic episode. [Dr. Beredjiklian] understood that Claimant was working packing umbrellas and leather-bound portfolios and making boxes.  Over the course of several days at work [Claimant] developed pain in the wrist. **Dr. Beredjiklian opined that there was no causal relationship between the diagnoses of right wrist ulnar impaction, right wrist TFCC tear and tendinitis with painful hardware with any work activity on June 25, 2012.  [Dr. Beredjiklian] related these diagnoses to a congenital condition that does not occur as a result of repetitive activities.**

[] **Assuming that the accepted work injury was a right wrist sprain due to the repetitive nature of the job occurring on June 25, 2012, Dr. Beredjiklian opined that Claimant was fully recovered from that injury.  Claimant's employment was not a substantial contributing factor in bringing about the diagnosis made by Dr. Gillon.**

[] On cross-examination, **Dr. Beredjiklian related Claimant's condition to wear and tear of daily life of which work would be a part.**  He did not see a history from any other doctor indicating that Claimant developed her wrist pain outside of work.  **He opined that her work activities had "no causal role or no material causal role" in creating the aggravation of her pre-existing condition.  The repetitive nature of her job had a very minor role in the development of her symptoms.**

[] Although Dr. Beredjiklian's report indicates a diagnosis of TFCC tear, status post-debridement, ulnar shortening osteotomy and hardware removal, when questioned on cross-examination regarding his diagnosis[,] he initially stated "I don't think I have a specific diagnosis."  [(R.R. at 55a.)]  [Dr. Beredjiklian] was not aware of the fact that the NCP indicated wrist sprain due to repetitive nature of the job until the day of his deposition.  When asked from what work injury he felt she had recovered, Dr. Beredjiklian indicated that he did not see

3

a work injury. He specifically stated that[,] based on the records he reviewed, he did not see any work injury.

(WCJ Decision, Finding of Fact (FOF) ¶ 1(a)-(d) (emphasis added).)

Claimant presented the deposition of David Bozentka, M.D., who began treating Claimant after Dr. Gillon performed a wrist arthroscopy and ulnar shortening osteotomy of her right wrist for treatment of the symptomatic ulnar impaction syndrome. His testimony was summarized by the WCJ as follows:

[] Dr. Bozentka opined that Claimant initially developed the ulnar wrist pain as a result of moving some boxes at work. Claimant had a pre-existing ulnar positive variance with resulting ulnar impaction syndrome with degeneration of the TFCC. As a result of her work activities, Claimant developed an aggravation of her preexisting ulnar impaction syndrome. Her ulnar impaction became symptomatic as a result of her work activity.

[] Dr. Bozentka understood that[,] ultimately, Claimant had an ECU synovectomy and plate removal due to tend[i]nitis of the tissues and tendon adjacent to the plate. This procedure was related to the initial surgery in which the plate was inserted.

* * *

[] Dr. Bozentka related Claimant's aggravation of her ulnar impaction syndrome requiring arthroscopy, ulnar shortening osteotomy, and ultimately plate removal, therapy and treatment by Dr. Gillon[,] as well as himself[,] to her work activities moving boxes. She has not fully recovered from her condition. To his knowledge, she has not developed similar symptoms in her left hand. Claimant had an ulnar positive variance of the left side as well. She is right hand dominant.

(WCJ Decision, FOF ¶¶ 2-3, 6.)

As stated above, Claimant also submitted the deposition testimony of Dr. Gillon, which was taken in support of the prior Suspension Petition and was admitted for the limited purpose of supporting the unreasonable contest claim. The WCJ summarized Dr. Gillon's testimony as follows:

4

[Dr. Gillon] first treated Claimant on August 30, 2012 for the work injury of June 25, 2012. Claimant presented for a second opinion regarding ongoing pain on the ulnar side of her right wrist and surgical recommendation by Dr. [Mark] Rekant [of the Philadelphia Hand Center]. Claimant first noticed the pain on June 25, 2012 after working all day. On that particular day, in addition to her duties as administrative assistant, [Claimant] was helping to put a cubic[le] together for a new employee.

[] X-rays revealed right and left wrist ulna lengthening known as ulnar impaction. [Dr. Gillon] diagnosed Claimant with right wrist symptomatic ulnar impaction. The MRI revealed a tear/hole in the triangular fibrocartilage complex (TFCC) with a small effusion into the distal radioulnar joint consistent with ulnar impaction.

[] On October 9, 2012, Dr. Gillon performed surgery in the nature of a right arthroscopic TFCC debridement and a right wrist ulnar shortening osteotomy. [Claimant] was restricted from work following the surgery. . . . On April 23, 2013, Claimant had residual swelling and probably extensor carpi ulnaris (ECU) tendinitis. [Dr. Gillon] saw Claimant again on May 2, 2013 and July 2, 2013. At that time, Claimant had a second opinion by Dr. Bozentka who agreed with the recommendation of hardware removal.

[] As of July 2, 2013, Dr. Gillon diagnosed Claimant with right wrist stiffness, right ECU tendinitis, and right wrist painful hardware. On August 12, 2013, Dr. Gillon performed surgery for hardware removal and ECU tenolysis to free up the tendon from the ulna and take away any inflammation around the tendon. Thereafter, he saw Claimant on August 20, 2013, September 19, 2013, [and] October 16, 2013[,] at which time he released Claimant to full duty work.

[] When asked to assume that the accepted injury is a right wrist sprain and provide an opinion as to whether or not she was fully recovered from that injury as of October 16, 2013, Dr. Gillon replied: "It's difficult to say because I didn't treat her . . . for a right wrist sprain." When the question was asked again, he stated "I can't say fully and completely only because of the decreased – somewhat decreased motion and decreased pain. . . ."

[] Dr. Gillon diagnosed Claimant with right wrist ulnar impaction, TFCC tear, and ECU tend[i]nitis. The wrist ulnar impaction and TFCC

5

tear he related to her **congenital condition** of an ulna being longer than her radius and wear and tear over time causing the tear. The ECU tend[i]nitis he related to the surgery and placement of the hardware. When asked if any of these conditions are related to her employment, Dr. Gillon stated: "What she related from the incident on June 25, 2012, was putting together a cubic[le]. She could have put more stress on her wrist at that point, and I consider it a **potential exacerbation, but not a cause.**"

[] On cross-examination, however, Dr. Gillon stated that he believed the work [constructing the cubicle] was the "main cause" of her wrist becoming symptomatic to the point that he performed surgery. Dr. Gillon submitted bills for his treatment[,] including two surgeries[,] to the Workers' Compensation carrier because he believed that he was treating her for work-related conditions.

(WCJ Decision, FOF ¶ 3 (citations omitted) (emphasis added).)

Claimant also testified on her own behalf and introduced a number of letters from her counsel to Employer's counsel, which requested that Employer recognize the injury diagnosed by Dr. Gillon and withdraw the Termination Petition.

Based upon the testimony, the WCJ granted Claimant's Review Petition, concluding Claimant met her burden of proving the work injury should be amended to include aggravation of her right ulnar impaction syndrome with TFCC tear requiring arthroscopy, ulnar shortening osteotomy, and plate removal for ECU tendinitis. The WCJ denied and dismissed Employer's Termination Petition, finding it failed to meet its burden of proving Claimant fully recovered from her work injuries. In reaching this conclusion, the WCJ found "the opinion of Dr. Bozentka to be more credible and persuasive than the opinion of Dr. Beredjiklian because Dr. Bozentka is one of Claimant's treating doctors and is therefore in a better position than Dr. Beredjiklian to render an opinion in this matter." (WCJ Decision, FOF ¶ 7.) The WCJ rejected Dr. Beredjiklian's opinion as neither competent nor credible on the basis that "Dr. Beredjiklian did not believe that Claimant sustained a work

6

injury and did not learn of the NCP that acknowledged a work injury in the nature of a right wrist sprain due to the repetitive nature of the job until just prior to his deposition." (*Id.*) Further, based upon the letters between counsel and the testimony of Dr. Gillon and Dr. Beredjiklian, the WCJ found Employer's contest of the Termination Petition and Review Petition was not reasonable. (*Id.* ¶ 15.)

Employer appealed to the Board solely arguing that the WCJ erred in concluding the contest was unreasonable and awarding attorney's fees. On appeal, the Board agreed, finding there was conflicting medical evidence to support Employer's contest. Specifically, the Board noted that Employer presented the testimony of Dr. Beredjiklian who testified that Claimant had no additional work-related diagnoses and disputed the expanded injuries as being work-related, which was in opposition to the Review Petition, and that Claimant was fully recovered from the accepted work injury, which was in support of the Termination Petition. (Board Op. at 4.) Although the WCJ rejected Dr. Beredjiklian's testimony, the Board noted that it still supported a reasonable contest. (*Id.*) Thus, the Board reversed the WCJ's award of unreasonable contest attorney's fees. In doing so, the Board rejected Claimant's argument that Dr. Beredjiklian's testimony was incompetent because he did not believe Claimant had sustained the original, accepted work injury. The Board explained:

> [w]hile Dr. Beredjiklian had questions as to whether Claimant ever sustained a work-related injury, he still opined that assuming that Claimant had sustained the accepted work injury, described as "right wrist sprain due to repetitive nature," that she was fully recovered from that injury at the time of his examination.

(*Id.* at 5.)

7

Claimant then appealed to this Court arguing the Board erred in reversing the award of attorney's fees.[5] Specifically, Claimant argues that Employer failed to offer sufficient evidence to demonstrate that its contest was reasonable because the only evidence presented by Employer was Dr. Beredjiklian's testimony and Dr. Beredjiklian testified he did not believe a work injury occurred. In addition, Claimant argues it was unreasonable for Employer to present no evidence to contradict Dr. Gillon's testimony and to refuse to amend the NCP and seek to terminate Claimant's benefits on the basis that she fully recovered.

## II.   Analysis

Under Section 440 of the Workers' Compensation Act,[6] a claimant is entitled to reasonable attorney's fees unless an employer can show a reasonable basis for its contest. 77 P.S. § 996. Whether an employer's contest is reasonable is a question of law based upon the WCJ's findings of fact. *Yespelkis v. Workers' Comp. Appeal Bd. (Pulmonology Assocs., Inc.)*, 986 A.2d 194, 196 (Pa. Cmwlth. 2009). "In determining whether a contest is reasonable, we must look to the totality of the circumstances." *Grady v. Workers' Comp. Appeal Bd. (Lutz)*, 26 A.3d 1229, 1232 (Pa. Cmwlth. 2011). "A reasonable contest exists when medical evidence is conflicting or is susceptible to contrary inferences, and there is no evidence that the employer's contest was frivolous." *Schachter v. Workers' Comp. Appeal Bd. (SPS Techs.)*, 910 A.2d 742, 746 (Pa. Cmwlth. 2006). Here, like the Board, we conclude

---

[5] This Court's standard of review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Steeple v. Workers' Comp. Appeal Bd. (Pa. Liquor Control Bd.)*, 796 A.2d 394, 396 (Pa. Cmwlth. 2002).

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708. Section 440 was added by the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 996.

8

Employer presented competent, conflicting medical testimony that rendered its contest reasonable.

First, with regard to the Termination Petition, under our precedent, a medical expert must, at a minimum, acknowledge an **accepted** or **established** work injury. *See, e.g.*, *Hall v. Workers' Comp. Appeal Bd. (Am. Serv. Grp.)*, 3 A.3d 734, 740 (Pa. Cmwlth. 2010) ("[A] medical expert's opinion will not support a termination if that medical expert does not acknowledge the **accepted** work injuries and does not opine full recovery from those injuries") (emphasis added); *Gillyard v. Workers' Comp. Appeal Bd. (Pa. Liquor Control Bd.)*, 865 A.2d 991, 997 (Pa. Cmwlth. 2005) (termination petition based "solely on testimony that failed to acknowledge the **established** work injury" was insufficient to support a termination petition) (emphasis added).  Here, the accepted or established work injury was a **right wrist sprain**, as described in the NCP.  Although Dr. Beredjiklian also testified, when pressed on cross-examination, that he did not believe Claimant suffered any work injury, as the Board correctly noted, he still testified, assuming Claimant had suffered the right wrist sprain, that she fully recovered from it.  This is sufficient to satisfy the standard set forth in *To v. Workers' Compensation Appeal Board (Insaco, Inc.)*, 819 A.2d 1222, 1225 (Pa. Cmwlth. 2003).  Therefore, Employer did present competent medical evidence that Claimant fully recovered from the accepted work injury.[7]  Because Employer never accepted the expanded work injury and because the Review Petition seeking to expand the accepted work injury was still pending, meaning the expanded injury was not yet "established," Employer was not required

---

[7] Questions of competency involve questions of law that are fully subject to our review. *Cerro Metal Prods. Co. v. Workers' Comp. Appeal Bd. (PLEWA)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004).  Therefore, while we are bound to accept the WCJ's credibility determinations, we are not bound by the WCJ's finding of incompetence.

to do anything more than it did. Although the WCJ discredited the testimony of Employer's expert in favor of Claimant's expert, which was within the WCJ's sole province to do, this does not render Employer's filing of the Termination Petition unreasonable especially in light of the conflicting medical evidence.

Second, with regard to the Review Petition, Claimant appears to argue that it was clear from the time of Dr. Gillon's deposition that aggravation of Claimant's pre-existing condition was at issue, and, therefore, Employer should have been prepared to present evidence to counter this testimony.[8] Employer did, in fact, present such testimony. Dr. Beredjiklian testified that Claimant's work played no role in aggravating Claimant's pre-existing condition. In summarizing the testimony of Employer's expert, the WCJ specifically found Dr. Beredjiklian "opined that [Claimant's] work activities had **'no causal role or no material causal role'** in

---

[8] We do not believe that it was clear that Claimant was alleging an exacerbation of her pre-existing, congenital condition, as compared to alleging that the existence of the condition itself was work-related. First, Dr. Gillon's testimony was equivocal, at best. He testified work was a "**potential** exacerbation, but not a cause," (R.R. at 164a (emphasis added)), and that "loading of the wrist [] **could** exacerbate this. Or lifting – putting that cubic[le], that **could** have been the straw that broke the camel's back, putting that cubic[le] together." (*Id.* at 186a (emphasis added).) Despite this testimony (including that work **was not a cause**), Dr. Gillon went on to testify, when questioned by Claimant's counsel, that "work **was the main cause** of her pain." (*Id.* (emphasis added).) It is noteworthy that Claimant did not rely on the testimony of Dr. Gillon, one of her treating physicians, to support her Review Petition and instead **utilized a different doctor** to establish her case. Second, neither Claimant's Review Petition nor the letters Claimant's counsel sent Employer's counsel asking that the NCP be amended make it clear what the amendment being sought actually was. The Review Petition simply states the NCP has an "Incorrect Description of Injury." (R.R. at 3a.) The letters from Claimant's counsel similarly are vague and only ask for recognition of the injury as diagnosed by Dr. Gillon, which, as discussed above, was unclear. (R.R. at 229a-32a.) In one of the letters, Claimant's counsel states that Employer elicited those opinions from Dr. Gillon during its case in chief. (*Id.* at 232a.) However, it was under questioning from Claimant's counsel that the treating physician testified that "work was the main cause of her pain." (R.R. at 186a.) Moreover, the letters reasonably could be interpreted as referring to the diagnosis of ulnar impaction syndrome, the condition itself, not its aggravation. Simply put, because it was not clear what Claimant was alleging – the existence of the congenital condition itself or exacerbation of the condition – we cannot conclude that Employer's contest was unreasonable.

10

**creating the aggravation of her pre-existing condition.**" (WCJ Decision, FOF ¶ 1(c) (emphasis added).) Thus, Employer's expert did address the exacerbation claim and offered conflicting testimony to that offered by Claimant's expert.

### III.    Conclusion

In conclusion, by failing to have its expert express an opinion about whether Claimant fully recovered from the expanded work injury alleged in Claimant's Review Petition, Employer assumed a risk that its Termination Petition would be denied and Claimant's Review Petition would be granted if the WCJ did not credit its expert's testimony. However, this does not make Employer's contest of the Review Petition unreasonable. Employer presented competent medical evidence that Claimant fully recovered from the accepted work injury, *i.e.*, a right wrist sprain, and was free to dispute the work-relatedness of the expanded injury alleged in the Review Petition, *i.e.*, aggravation of the ulnar impaction syndrome. The sole issue before us is whether Employer's contest was reasonable. Again, although the WCJ credited Claimant's expert over Employer's expert, this does not make the opinion of Employer's expert incompetent or Employer's contest of the Review Petition unreasonable. Accordingly, we affirm the Board's Order.

_____

**RENÉE COHN JUBELIRER,** Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lourdes Sarmiento-Hernandez,          :
                       Petitioner          :
                                  :
             v.          :    No. 1799 C.D. 2016
                                  :
Workers' Compensation Appeal          :
Board (Ace American Insurance          :
Company),          :
                     Respondent          :

# **O R D E R**

**NOW**, February 13, 2018, the Order of the Workers' Compensation Appeal Board, dated October 12, 2016, is **AFFIRMED**.

                                 _____

                                 **RENÉE COHN JUBELIRER,** Judge

Lourdes Sarmiento-Hernandez, :
                Petitioner :
                              :
            v. :
                              :
Workers' Compensation Appeal :
Board (Ace American Insurance :
Company), : No. 1799 C.D. 2016
                Respondent : Submitted: December 6, 2017


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge


DISSENTING OPINION BY
JUDGE COVEY                       FILED: February 13, 2018

         I respectfully dissent from the Majority's conclusion that "failing to have [Employer's] expert express an opinion about whether [Sarmiento-Hernandez (]Claimant(]) fully recovered from the expanded work injury alleged in Claimant's Review Petition[]" "does not make [Ace American Insurance Company's (]Employer[)] contest of the Review Petition unreasonable." Majority Op. at 11. Because Employer was well aware of Claimant's expanded work injury months in advance of the Workers' Compensation Judge (WCJ) hearings and rather than accept the expanded work injury or produce competent medical evidence to challenge it, Employer chose to file a Petition to Terminate Compensation Benefits (Termination Petition) on the basis of an opinion of a doctor who refused to accept the original work-related injury, I would reverse the Workers' Compensation Appeal Board's (Board) order reversing the WCJ's decision awarding unreasonable contest attorney's

fees. *See Noverti v. Workmen's Comp. Appeal Bd. (Newtown Squire Inn)*, 686 A.2d 455 (Pa. Cmwlth. 1996) (Employer cannot establish grounds for termination based on evidence that Claimant's expanded injury is not work-related because, in fact, the original work injury is not work-related).

The law is well-established that

> [w]here **a claimant** succeeds in a litigated case, she **is entitled to reasonable attorney fees** pursuant to Section 440 of the Workers' Compensation Act, (Act)[1] **unless the employer meets its burden of establishing facts sufficient to prove a reasonable basis for its contest**. The issue of whether an **employer's contest was reasonable is a legal conclusion based on the WCJ's findings of fact**. The reasonableness of an employer's contest depends on **whether the contest was prompted to resolve a genuinely[-]disputed issue** or merely to harass the claimant.

*Yespelkis v. Workers' Comp. Appeal Bd. (Pulmonology Assocs., Inc.)*, 986 A.2d 194, 196 (Pa. Cmwlth. 2009) (footnote and citations omitted; emphasis added). "In determining whether a contest is reasonable, we must look to the totality of the circumstances." *Grady v. Workers' Comp. Appeal Bd. (Lutz)*, 26 A.3d 1229, 1232 (Pa. Cmwlth. 2011). "A reasonable contest exists when medical evidence is conflicting or is susceptible to contrary inferences, and there is no evidence that the employer's contest was frivolous[.]" *Schachter v. Workers' Comp. Appeal Bd. (SPS Techs.)*, 910 A.2d 742, 746 (Pa. Cmwlth. 2006); *see also Gunther v. Workmen's Comp. Appeal Bd.*, 444 A.2d 1342 (Pa. Cmwlth. 1982). "The question . . . is not whether the [WCJ] believed the employer['s] witness but whether the opinion of the witness provided a reasonable basis for the [employer's] contest of the claim." *Spatola & Thompson v. Workmen's Comp. Appeal Bd.*, 401 A.2d 877, 880 (Pa.

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 996.

Cmwlth. 1979). Because "[t]he existence of a reasonable contest is a question of law, based on the WCJ's findings of fact, [it is] fully reviewable by this Court." *Crouse v. Workers' Comp. Appeal Bd. (NSP Energy SVC),* 801 A.2d 655, 657 (Pa. Cmwlth. 2002).

First, in determining whether there was conflicting medical evidence to oppose Claimant's Review Petition, the Board acknowledged that the WCJ rejected the testimony of Employer's medical expert, Pedro Beredjiklian, M.D. (Dr. Beredjiklian), "as not credible." Board Op. at 4. However, the Board stated that if the WCJ had accepted said testimony it would have supported Employer's opposition to the Review Petition. To the contrary, Claimant's Review Petition sought expansion of the accepted work injury and Dr. Beredjiklian's testimony was limited to his belief that there was no work injury, but assuming a work injury existed, Claimant had recovered. Dr. Beredjiklian expressly related that Claimant's ulnar impaction was congenital. Further, he presented no testimony with respect to Claimant's Review Petition that her ulnar impaction had become symptomatic as a result of her work activities or that Claimant had recovered from the expanded work injury.

Moreover, the WCJ also rejected Dr. Beredjiklian's testimony because it was not "competent." Reproduced Record (R.R.) at 255a. "When expert medical testimony for the claimant is . . . competent and the employer's expert medical testimony is . . . incompetent, employer's testimony will not suffice as substantial evidence supporting a finding upon which an award for the employer is based." *Manners v. Workers' Comp. Appeal Bd. (McDonald's Restaurant),* 688 A.2d 786, 788 (Pa. Cmwlth. 1997). Because the WCJ found Dr. Beredjiklian's testimony incompetent and that was the only medical evidence Employer presented in opposition to Claimant's Review Petition, the WCJ concluded that Employer's contest was unreasonable.

> Although it is solely the role of the WCJ to assess credibility and resolve conflicts in the evidence, **the question of the competency of the evidence is one of law and fully subject to our review**. *Cramer v. Workmen's Comp*[.] *Appeal* [*Bd.*] *(Uni-Marts & PMA Group),* . . . 627 A.2d 231, 233 ([Pa. Cmwlth.] 1993). 'Competency when applied to medical evidence, is merely a question of whether the witnesses' [sic] opinion is sufficiently definite and unequivocal to render it admissible.' *Id.* We have often observed that **medical evidence is unequivocal as long as the medical expert, after providing a foundation**, testifies that in his professional opinion he believes or thinks the facts exist.

*Cerro Metal Products Co. v. Workers' Comp. Appeal Bd. (Plewa),* 855 A.2d 932, 937 (Pa. Cmwlth. 2004) (citation omitted; emphasis added).

Here, Dr. Beredjiklian opined that there was no causal relationship between Claimant's diagnoses of right wrist ulnar impaction, right wrist TFCC tear and tendinitis with painful hardware with any work activity on June 25, 2012. Dr. Beredjiklian related these diagnoses to a congenital condition that does not occur as a result of repetitive activities. **Dr. Beredjiklian specifically stated that, based on the records he reviewed, he did not see any work injury**. However, based on Claimant's reports of right wrist pain, Employer through a Notice of Compensation Payable (NCP) accepted a right wrist sprain due to repetitive use, and Thomas J. Gillon, M.D. (Dr. Gillon) testified, prior to Dr. Beredjiklian's deposition, that the ulnar impaction that Dr. Beredjiklian referred to **became symptomatic**, i.e., producing pain requiring surgery, due to Claimant's work activity of putting together a cubicle.

Dr. Beredjiklian never addressed Claimant's pain or her ulnar impaction becoming symptomatic. Rather, Dr. Beredjiklian testified that Claimant's ulnar impaction was a non-work-related congenital condition. However, there was no dispute that Claimant had an ulnar impaction nor was it disputed that it was a

congenital condition. What Dr. Beredjiklian needed to address, but failed to do so, was Claimant's pain which led to her two surgeries and whether Claimant's ulnar impaction had become symptomatic due to a work-related activity.[2] Because Dr. Beredjiklian never addressed Dr. Gillon's or David Bozentka, M.D.'s unequivocal medical testimony that Claimant's performance of her work duties aggravated her ulnar impaction to the point of it becoming symptomatic and requiring two surgeries, Employer failed to produce any evidence that Claimant's expanded injury was not

---

[2] The Majority states: "We do not believe that it was clear that Claimant was alleging an exacerbation of her pre-existing, congenital condition, as compared to alleging that the existence of the condition itself was work related." Majority Op. at 10 n.8. However, a reading of Claimant's counsel's letters leaves no doubt as to what Claimant was seeking. Claimant's counsel specifically advised Employer's counsel on October 9, 2014:

> During [Dr. Gillon's] deposition, Dr. Gillon diagnosed a right wrist *symptomatic* ulnar impaction and an injury to the triangular fibrocartilage complex. Dr. Gillon also testified that the surgery in the form of debridement and ulnar shortening osteotomy were related to Claimant's employment. . . .

R.R. at 230a (emphasis added). On December 30, 2014, Claimant's Counsel again advised Employer's Counsel:

> During our conversation, I told you that the doctor's medical opinions are fatally deficient concerning your current [Termination] Petition. The doctor did not even acknowledge that an injury took place and in light of the fact that there is a recognized injury, the doctor's medical opinions that the Claimant did not suffer any injury at all, renders his opinions unacceptable in any workers' compensation case. . . .

R.R. at 229a.

Finally, Claimant complained about pain in her wrist, and Employer accepted that the pain was caused by her work activities. *See* NCP, R.R. at 241a. Claimant did not allege, nor did her doctors so testify, that the congenital condition (ulnar impaction syndrome) was work-related. In fact, Claimant sought recognition of the work injury as described by Dr. Gillon. *See* R.R. at 229a, 230a. Thus, Claimant clearly communicated she was alleging that the exacerbation of her condition was work-related, not the congenital condition itself. Moreover, the Majority stated: "[I]n her Review Petition, Claimant sought to have the NCP amended to include the conditions to which Dr. Gillon testified." Majority Op. at 2-3.

work-related. Accordingly, the WCJ properly determined that Dr. Beredjiklian's testimony was incompetent.[3] Since Dr. Beredjiklian's testimony was incompetent and that was the **only** medical evidence Employer presented in opposition to Claimant's Review Petition, the Board erred when it concluded that Employer presented conflicting medical testimony. As Employer failed to present competent medical evidence and had no support for challenging Claimant's Review Petition, Employer's contest was unreasonable.[4]

Further, since Employer did not present any competent conflicting medical testimony with respect to the Review Petition, it was not reasonable for

---

[3] The Dissent acknowledges the WCJ's finding that Dr. Beredjiklian, **on cross-examination**, "**opined** that [Claimant's] work activities had 'no causal role or no material causal role' in creating the aggravation of her pre-existing condition." WCJ FOF 1(c) (emphasis added). However, when asked "[w]hat do you mean by no causal role or no material role?" Dr. Beredjiklian responded: "[**Claimant's**] **work did not cause her ulnar impaction**, and her work did not have any significant or important role in creating her condition." R.R. at 44a (emphasis added). Dr. Beredjiklian's explanation reveals that he was referring to Claimant's ulnar impaction being congenital. Even assuming he was referring to the aggravation, Dr. Beredjiklian did not accept the work injury, making his testimony incompetent. It is irrelevant whether Employer's expert was believed because "[w]hen the party without the burden of proof does not present any *competent* evidence it is the same as if that party presented no evidence." *Kondrat v. Workmen's Comp. Appeal Bd. (Westinghouse Elec. Corp.),* 603 A.2d 689, 691 (Pa. Cmwlth. 1991).

[4] The Majority addresses the reasonableness of the Termination Petition before the reasonableness of the Review Petition. By addressing the Termination Petition first, it appears that the only issue is whether the original work injury resolved. However, Dr. Gillon testified with respect to Claimant's expanded injuries before Employer filed its Termination Petition, and Claimant's Counsel advised Employer's Counsel that Claimant was seeking to expand the injury before the hearing thereon. *See Weidner v. Workmen's Comp. Appeal Bd.,* 332 A.2d 885 (Pa. Cmwlth. 1975) (employer's pursuit of its petition to terminate, after the claimant filed an answer claiming residual disability and asserting continued medical care, was not a contest for which there was a reasonable basis; the facts of disability and continued treatment were readily available to the employer and its carrier). Claimant's Counsel expressly advised Employer's Counsel that "Dr. Gillon diagnosed a right wrist symptomatic ulnar impaction and an injury to the triangular fibrocartilage complex[,]" and that Employer's "doctor's medical opinions are fatally deficient concerning [its] current [Termination] Petition" prior to the hearing. R.R. at 229a-230a. Thus, the analysis should be reversed, thereby, like the WCJ, first addressing the Review Petition then the Termination Petition. Reversing the issues makes it clear the contest was unreasonable.

Employer to proceed as if the WCJ would not accept the expanded work injury.[5] The Majority opines: "Because Employer never accepted the expanded work injury and because the Review Petition seeking to expand the accepted work injury was still pending, meaning the expanded injury was not yet 'established,' Employer was not required to do anything more than it did." Majority Op. at 9-10. However, whether the expanded work injury was yet to be "established" is not the issue and ignores the reasons for the WCJ hearings. **The issues before the WCJ were whether Claimant's work injury should be expanded. If not, did Claimant fully recover from the work injury Employer had accepted. If so, did Claimant fully recover from the expanded work injury. Knowing the issues, and the medical documentation and testimony in support of Claimant's expansion of her work injury, Employer was obligated to present evidence to refute expansion of the work injury for purposes of the Review Petition, and if the WCJ accepted the same, suffer the consequence of paying Claimant's attorney's fees for an unreasonable contest with respect to the Termination Petition.** This case does **not** involve the sole issue, as the Majority so seeks to characterize the action, of whether Claimant recovered from her accepted work injury. Pursuant to the Act and as a practical matter, the WCJ does not conduct days of hearings for the parties to present their evidence on Claimant's Review Petition, wherein, she seeks to expand her work injury and Employer's Termination Petition for Employer to have no legal obligation to address whether Claimant fully recovered from the expanded work injury.

---

[5] Employer cannot credibly claim that it did not know the extent of Claimant's injury as it paid for Claimant's two surgeries through its workers' compensation insurance and provided Claimant workers' compensation disability benefits during her absence from work due to the surgeries.

As the Majority acknowledges: "[I]n [Claimant's] Review Petition, Claimant sought to have the NCP amended to include the conditions to which Dr. Gillon testified [Dr. Gillon 'diagnosed Claimant with right wrist symptomatic ulnar impaction' WCJ Dec. FOF 3(b)]." Majority Op. at 2-3. The Majority also points out that the WCJ held several days of hearings. Given that Employer had notice of the expanded injuries prior to those hearings, Employer was obligated to refute those injuries in order to maintain a reasonable contest. Employer chose not to contest the expanded injuries. "[B]y failing to have its expert express an opinion about whether Claimant fully recovered from the expanded work injury alleged in Claimant's Review Petition, Employer assumed a risk that its Termination Petition would be denied and Claimant's Review Petition would be granted if the WCJ did not credit [Employer's] expert's testimony[,]" Majority Op. at 11, as well as payment of Claimant's attorney's fees for an unreasonable contest. Accordingly, the Board erred by finding there was a reasonable basis for the Termination Petition.

"The Act's overall purpose [is to] provid[e] workers expeditious coverage for their medical expenses and financial stability during their work-related disability . . . ." *Nagle v. True Blue, Inc.,* 148 A.3d 946, 961 (Pa. Cmwlth. 2016.) "The purpose of Section 440 of the Act is to discourage unreasonable contests of workers' claims and to ensure that successful claimants receive compensation benefits that are undiminished by the costs of litigation." *Steeple v. Workers' Comp. Appeal Bd. (Pa. Liquor Control Bd.),* 796 A.2d 394, 397 (Pa. Cmwlth. 2002). Further, "'we keep in mind that the [Act] is remedial in nature and intended to benefit the worker, and, thus, should be construed liberally to effectuate its humanitarian objectives.' *Sch. Dist. of Phila. v. Workers' Comp. Appeal Bd. (Hilton),* 117 A.3d 232, 241–42 (Pa. 2015)." *Northtec, LLC v. Workers' Comp. Appeal Bd. (Skaria),* 147 A.3d 63, 67 (Pa. Cmwlth. 2016) (footnote omitted). To permit Employer to prevail in this case would produce a long-term chilling effect as it would encourage employers

to deny claims notwithstanding the lack of any evidence to address the specific issues raised.  Here, Employer was well aware of Claimant's alleged expanded work injury, months in advance of the WCJ hearings, and rather than accept it or produce competent medical evidence to challenge the specific issue raised, i.e., aggravation of Claimant's symptomatic ulnar impaction, it chose to file a Termination Petition on the basis of the opinion of a doctor who refused to accept the work-related injury. Clearly, Employer's actions are contrary to the Act's purpose.

For all of the above reasons, I would reverse the Board's order with respect to the award of unreasonable contest attorney's fees, but affirm in all other respects.


_____
ANNE E. COVEY, Judge