IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Derek Everage, : 
               Petitioner : 
                : 
      v. : 
                : 
City of Philadelphia (Workers' : 
Compensation Appeal Board), :   No. 631 C.D. 2022
          Respondent :   Submitted: March 24, 2023

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                       FILED: June 23, 2023

Derek Everage (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) May 25, 2022 order affirming WC Judge Erin Young's (WCJ Young) October 15, 2021 decision (2021 WCJ Decision) that granted the City of Philadelphia's (Employer) Petition to Terminate WC Benefits (Termination Petition). Claimant presents one issue for this Court's review: whether Employer met its burden of proving that Claimant fully recovered from his work-related injury. After review, this Court affirms.

Claimant worked as an asphalt raker for Employer.[1] On February 13, 2018, while pushing asphalt through a chute, Claimant heard a pop and experienced

---

[1] Claimant's job as an asphalt raker was very physical, requiring him to use an 85-pound jackhammer for street repairs, shovel large asphalt pieces and throw them into a truck, rake large amounts of asphalt out of a truck, smooth the asphalt to fill the hole, and tamp the asphalt down with a 65- to 70-pound tamper. *See* Certified Record Item 14, April 29, 2021 Notes of Testimony (N.T.) at 11-13, 32, 50, 52. The job entails repetitive lifting, bending, and squatting. *See* N.T. at 13.

stabbing pain in his groin, stomach, and legs. Claimant was diagnosed with an abdomen/groin strain, for which he underwent right inguinal hernia surgery repair by William Meis, D.O. (Dr. Meis), on March 20, 2018. On March 27, 2018, Employer issued a Notice of Temporary Compensation Payable, pursuant to which it paid Claimant total disability benefits.

On or about May 7, 2018, Claimant returned to full-duty work with Employer, and felt a pop in his lower abdomen and pain like he experienced with his initial work injury. Claimant attempted to work for two days, but treated at the emergency room on May 9, 2018, where an examination revealed Claimant had right groin swelling and tenderness and blood in his stool. Claimant's computerized tomography scan was negative, and he was told to follow up with his doctor. On May 14, 2018, Claimant treated with Dr. Meis who initially concluded that Claimant could return to work but, after understanding the heavy-duty nature of Claimant's job duties, declared that Claimant was unable to return to work until August 8, 2018.

Due to ongoing complaints of right groin pain that extended into his leg and lower back, Claimant began treating with Michael McCoy, M.D. (Dr. McCoy), in June 2018. Dr. McCoy diagnosed Claimant with inguinal hernia repair status post-surgery and related back pain resulting from his February 13, 2018 work injury, declared Claimant disabled from his time-of-injury job (but he could do a light-duty or sedentary job), and recommended Claimant undergo physical therapy, which he did.[2]

On June 13, 2018, Claimant filed a Petition to Reinstate WC Benefits (Reinstatement Petition), again requesting total disability benefits. On or about July 19, 2018, Employer filed a Petition to Modify/Suspend WC Benefits (Modification/Suspension Petition), therein alleging that Claimant had fully

---

[2] From June 28, 2018 to March 10, 2020, Claimant's therapy consisted of therapeutic exercise and activity, and electric stimulation.

recovered from his work-related injuries. Claimant denied Employer's claims. On or about August 19, 2018, Employer filed a Petition to Terminate WC Benefits (First Termination Petition). On January 28, 2019, Dennis McHugh, M.D. (Dr. McHugh), performed an independent medical evaluation (IME) on Claimant. Dr. McHugh declared that Claimant did not sustain a back injury in the February 13, 2018 work accident, and that Claimant had fully recovered from his work injury.[3]

WCJ Patricia Bachman (WCJ Bachman) held hearings at which Claimant presented Dr. McCoy's testimony, and Employer presented Dr. McHugh's and Dr. Meis' medical testimony. WCJ Bachman found Dr. McCoy credible, and accepted as fact his testimony relative to Claimant's ongoing right inguinal hernia pain. On November 26, 2019, WCJ Bachman denied Employer's First Termination Petition and Modification/Suspension Petition on the basis that Employer failed to prove that Claimant was fully recovered from his February 13, 2018 work injury, and dismissed Claimant's Reinstatement Petition as moot (2019 WCJ Decision). Employer did not appeal from the 2019 WCJ Decision.

On July 27, 2020, Lorenz Iannorone, M.D. (Dr. Iannorone) conducted an IME on Claimant. Dr. Iannorone concluded that Claimant had no objective findings related to his hernia repair and that Claimant's subjective complaints were not related to the work injury; thus, Claimant had fully recovered from his work-related injuries and was able to return to work without restrictions. Based on the IME, Employer filed the Termination Petition, therein arguing that Claimant's work-related injury had ceased. Claimant denied Employer's allegations.[4] WCJ Young

_____

[3] Claimant was involved in several motor vehicle accidents in 2018 and 2019, in which he sustained injuries, including to his back. Dr. McCoy treated Claimant for the injuries sustained in those accidents. However, WCJ Young found that none of Claimant's myriad of injuries resulting from those motor vehicle accidents overlapped with his work-related hernia injury. *See* 2021 WCJ Dec. at 8.

[4] Employer also requested supersedeas which WCJ Young denied on October 7, 2020.

conducted hearings on September 14, 2020, and February 22 and April 29, 2021, at which the parties presented, *inter alia*, Dr. McCoy's and Dr. Iannorone's testimony. On October 15, 2021, having found Dr. Iannorone's testimony more credible than Dr. McCoy's, WCJ Young granted the Termination Petition on the basis that Employer met its burden of proving that Claimant fully recovered from his work injury as of July 27, 2020.

Claimant appealed to the Board, arguing that, based on *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922 (Pa. 2007), WCJ Young erred by terminating Claimant's WC benefits in the absence of medical evidence that a change had occurred in his condition since the 2019 WCJ Decision. On May 25, 2022, the Board affirmed the 2021 WCJ Decision. Claimant appealed to this Court.[5]

Claimant argues that WCJ Young erred by failing to find and/or conclude that Claimant experienced a change in his condition after the 2019 WCJ Decision, and Dr. Iannorone's testimony that Claimant had fully recovered from his work-related injury was legally incompetent because he misapprehended the correct description of Claimant's accepted work injury.

Section 413(a) of the WC Act (Act)[6] states, in pertinent part:

> A [WCJ] . . . may, at any time, . . . terminate . . . an award of . . . [a WCJ], upon petition filed by either party . . . , upon proof that the disability[7] of an injured employe has . . . finally ceased . . . . Such . . . termination shall be made

---

[5] "[This Court's] review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed[,] or whether constitutional rights were violated." *DiLaqua v. City of Phila. Fire Dep't (Workers' Comp. Appeal Bd.)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2020) (quoting *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 595 n.6 (Pa. Cmwlth. 2019)).

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[7] "Under [WC] law, the term 'disability' is synonymous with loss of earning power." *Donahay v. Workers' Comp. Appeal Bd. (Skills of Cent. PA, Inc.)*, 109 A.3d 787, 792 (Pa. Cmwlth. 2015).

as of the date upon which it is shown that the disability of the injured employe has . . . finally ceased[.]

77 P.S. § 772. To succeed in a termination petition, an employer must prove by substantial evidence that the claimant's work-related injury has ceased, or any remaining conditions are not related to his work injury. *See Baumann v. Workers' Comp. Appeal Bd. (Kellogg Co.)*, 147 A.3d 1283 (Pa. Cmwlth. 2016). "An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from [his] work-related injuries." *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). Such medical expert testimony must recognize the claimant's accepted work-related injury to be competent to opine that the claimant has fully recovered therefrom. *See Sarmiento-Hernandez v. Workers' Comp. Appeal Bd. (Ace Am. Ins. Co.)*, 179 A.3d 105 (Pa. Cmwlth. 2018); *see also Westmoreland Cnty*.

Moreover, in *Lewis*, the Pennsylvania Supreme Court explained:

In order to terminate benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, it is first necessary that the employer[']s petition be based upon medical proof of a change in the claimant's physical condition. Only then can the [WCJ] determine whether the change in physical condition has effectuated a change in the claimant's disability, i.e., the loss of his earning power. Further, by natural extension **it is necessary** that, **where there have been prior petitions to** modify or **terminate benefits**, **the employer must demonstrate a change in physical condition**[8] **since the last disability determination**. Absent this requirement "a disgruntled employer (or claimant) could repeatedly attack what he considers an erroneous decision of a referee by filing petitions based on the same evidence ad infinitum, in the hope that one

---

[8] The *Lewis* Court clarified that "'[c]hange of condition,' [as opposed to *disability*], is any change in the claimant's physical well[-]being that affects his ability to work. It can be the total recovery from an illness or merely that the symptoms subside." *Id*. at 926 (quoting *City of Phila. v. Workers' Comp. Appeal Bd. (Szparagowski)*, 831 A.2d 577, 585 (Pa. 2003)).

5

[WCJ] would finally decide in his favor." *Dillon* [*v. Workmen's Comp. Appeal Bd. (Greenwich Collieries)*], 640 A.2d [386,] 389 [(Pa. 1994) (]quoting *Banks v. W*[*orkmen's*] *C*[*omp.*] *A*[*ppeal*] *B*[*d.*], . . . 327 A.2d 404, 406 ([Pa. Cmwlth.] 1974)[)].

*Lewis*, 919 A.2d at 926 (emphasis added). An employer's medical expert is "required to accept as true the adjudicated fact that a condition existed and opine as to whether the condition continues to exist at the time of the examination." *Folmer v. Workers' Comp. Appeal Bd. (Swift Transp.)*, 958 A.2d 1137, 1147 (Pa. Cmwlth. 2008).

This Court has recognized that the evidence necessary to prove a change since a prior adjudication "will be different in each case." *Folmer*, 958 A.2d at 1144. "[**B**]**y accepting the employer's medical evidence of full recovery as credible**, **a WCJ could properly make a finding that the employer has met the standard set forth in *Lewis* [of] a change in [the c]laimant's condition**." *Del*[.] *Cnty. v. Workers' Comp. Appeal Bd. (Browne)*, 964 A.2d 29, 35 (Pa. Cmwlth. 2008) (emphasis added); *see also Johnson v. Workers' Comp. Appeal Bd. (Bucks Cnty. Intermediate Unit)* . . . (Pa. Cmwlth. No. 1232 C.D. 2010, filed Feb[.] 26, 2013). Moreover, although the WCJ's finding cannot be based solely upon evidence that pre-dates the previous adjudication, *id.*[,] it **may be based upon a review of such evidence plus a post-adjudication examination**. *See Adams v. Workers' Comp. Appeal Bd. (Cmty. Behavior*[]*al Health)* . . . (Pa. Cmwlth. No. 1368 C.D. 2010, filed May 19, 2011); *see also Krnaich v. Workers' Comp. Appeal Bd. (Allegheny Ludlum Corp.)* . . . (Pa. Cmwlth. No. 215 C.D. 2014, filed Sept[.] 3, 2014); *Johnson*. Finally, "it is not necessary [for the employer] to demonstrate that a claimant's diagnoses have changed since the last proceeding, but only that **his symptoms have improved to the point where he is capable of gainful employment**." *Simmons v. Workers' Comp. Appeal Bd. (Powertrack Int'l)*, 96 A.3d 1143, 1149 (Pa. Cmwlth. 2014) (emphasis added). This Court has declared that a **change** sufficient to satisfy the *Lewis* requirement **exists if there is a lack of objective findings to substantiate a**

> **claimant's continuing complaints**. *See Adams*; *see also Krnaich*.

*Baumann*, 147 A.3d at 1291 (emphasis in original; footnotes omitted).[9]

In the 2019 WCJ Decision regarding the First Termination Petition, WCJ Bachman accepted Dr. McCoy's diagnosis, acknowledged by Employer's expert medical witness Dr. Meis, that Claimant continued to suffer from his work-related inguinal hernia status post-surgical repair. *See* 2019 WCJ Dec. at 6-7.

Relative to the Termination Petition, Employer presented Dr. Iannorone's October 26, 2020 deposition testimony. Dr. Iannorone testified that he reviewed Claimant's medical records and Dr. McCoy's deposition prior to the July 27, 2020 IME, in addition to interviewing and examining Claimant at the IME. *See* Certified Record (C.R.)[10] Item 23, Dr. Iannorone Oct. 26, 2020 N.T. at 12-14. Dr. Iannorone recalled Claimant reporting that he has bloody stools, ongoing back and stomach pain, and pain in his perineum, lower abdomen and groin, and down the inside of his lower extremity since his March 2018 surgery. *See id*. at 17-18, 43. Dr. Iannorone described that Claimant had no evidence of scar tissue, and, although he exhibited tenderness over both groins (the right a little more than the left), both were "within the realm of normal." *Id*. at 22; *see also id*. at 23, 26-27. Dr. Iannorone further asserted that Claimant's complaints of bloody stools, and perineum, back and lower extremity pain are not related to his work accident because they are not connected to inguinal hernias. *See id*. at 28-29.

---

[9] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). The unreported cases cited herein are cited for their persuasive value.

[10] Because the parties only included limited excerpts of the hearing and deposition transcripts in the Reproduced Record and Supplemental Reproduced Record, this Court reviewed the full testimony in the Certified Record documents and, thus, cites thereto.

Specifically, Dr. Iannorone expressed:

[W]hen [Claimant] complained of his pain, it's described as . . . [a]ching, throbbing, shooting, stabbing, sharp, burning, exhausting, tiring, penetrating and with numbness. And he can't do anything. He can't sit too long. He can't stand too long. He can't have intercourse anymore. And when I asked him what he took for his pain, since it was excruciating and miserable, he said he doesn't take anything. . . . That doesn't make sense -- just doesn't add up, period.

*Id.* at 30.

Ultimately, Dr. Iannorone acknowledged the accepted work injury and concluded:

Q[.] Assuming [Claimant suffered a hernia status post hernia repair and any back pain resulting therefrom resolved by October 9, 2018, as WCJ Bachman previously found], do you have an opinion, within a reasonable degree of medical certainty, whether or not [] [C]laimant fully recovered from his hernia, status post[-]hernia repair, that he suffered as a result of the February 13, 2018 work activities?

A[.] Yes. I thought [**Claimant**] **was fully recovered** when I saw him as of July 27, 2020.

*Id.* at 28 (emphasis added).[11] Dr. Iannorone further declared: "[**Claimant was**] **fully healed**" **from the inguinal hernia** and, although he may want to rethink returning to his pre-injury job due to his age, "[**Claimant**] **can do it**." *Id.* at 31 (emphasis added). Dr. Iannorone did not testify that Claimant's condition changed after WCJ Bachman issued the 2019 WCJ Decision.

---

[11] Claimant argues that Dr. Iannorone questioned whether Claimant suffered an indirect inguinal hernia because he testified that "[m]ost indirect hernias are congenital in nature, while most direct inguinal hernias occur because of a tear." Dr. Iannorone 10/26/2020 N.T. at 40. However, in rendering his conclusion, Dr. Iannorone agreed that Claimant's accepted work injury was inguinal hernia status post-surgical repair. *See id.* at 28.

8

In opposition to the Termination Petition, Claimant testified and presented Dr. McCoy's March 13, 2019, and March 31, 2021 deposition transcripts. Claimant testified that his groin/testicular pain has been ongoing since his surgery, he continues to treat with Dr. McCoy and attends physical therapy, and he has been unable to return to work. *See* C.R. Item 14, April 29, 2021 N.T. at 20-23, 29-20. Claimant described that he experiences sharp and shooting groin pain (level 8 on a 1-10 scale) and testicular pain (level 6-8 on a 1-10 scale), like getting kicked in the groin, on his right and left, that travels into his hamstrings. *See id.* at 26-27, 30-31. He claims that he is unable to sit for long periods of time, and bending is difficult. *See id.* at 25, 27, 30. Claimant articulated that his pain makes it difficult to complete home activities, like cleaning, without having to regularly stop and rest because of pain. *See id.* at 31-32. Claimant stated that his physical therapy sessions help, but that his pain returns within a few hours thereafter. *See id.* at 23-27. He explained that his pain keeps him from attending his church and visiting his grandchildren in Maryland as often as he did in the past. *See id.* at 65. Claimant asserted that, although he previously took medications to alleviate pain, he discontinued them because he "was worried about having a problem with that." *Id.* at 32-33.

According to Dr. McCoy's March 31, 2021 deposition transcript, he reviewed his March 13, 2019 deposition and continues to stand by his testimony. *See* C.R. Item 15, Mar. 31, 2021 N.T. at 6-7. He also reviewed Claimant's medical records since March 2019, including Dr. Iannorone's IME report and testimony related thereto. *See id.* at 8-9. Dr. McCoy confirmed that he treated Claimant seven times in 2019, approximately monthly in 2020, and in March 2021, for ongoing right side groin pain extending into his right testicle related to his accepted work-related inguinal hernia, Claimant continued physical therapy which provides temporary relief, and he has not released Claimant to return to his pre-injury job. *See id.* at 8-14, 28-29. Dr. McCoy described Claimant's ongoing complaints to include pain

9

with prolonged standing and walking, and problems defecating. *See id.* at 10, 13-14. Dr. McCoy articulated that Claimant's ongoing symptoms were "signs of having essentially a failed hernia repair" because of the mesh and scar tissue. *Id.* at 14; *see also id.* at 23. Since March 2020, Dr. McCoy prescribed Claimant Motrin, Lidocaine, and Cialis. *See id.* at 15.

Dr. McCoy's diagnosis remained "right inguinal hernia status post[-]surgical repair" causally related to Claimant's February 13, 2018 work incident, and he opined that, although Claimant could probably do a sedentary job, he was unable to return to his time-of-injury job. *Id.* at 17; *see also id.* at 16, 18-23. Dr. McCoy expounded:

> It's my opinion that this is permanent. . . . [T]ypically, when you have these kinds of issues, you go and take the mesh out. [Claimant] doesn't want to have any[]more surgery done. He is like, look, I'm just going to live with it. If that's the case, he was [sic] going to be this way for the duration.

*Id.* at 23. Therefore, Dr. McCoy stated that he has not referred Claimant to another doctor to determine whether further surgery was an option, or whether something else is causing Claimant's pain. *See id.* at 27, 30.

[T]he primary role of the WCJ is well settled:

> The WCJ is the fact[-]finder, and it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence. Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. In addition, it is solely for the WCJ, as the fact[-]finder, to determine what weight to give to any evidence. . . . As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted.
>
> *Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Emp. Guar. Fund),*

10

159 A.3d 61, 69 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted). "Determining the credibility of the witnesses is the quintessential function of the fact[-]finder . . . . It is not an exact science, and the ultimate conclusion comprises far more than a tally sheet of its various components." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195-96 (Pa. Cmwlth. 2006) (declining to "dissect and analyze each of the WCJ's reasons for his credibility determination"). An appellate tribunal must view the WCJ's reasoning as a whole and may overturn a credibility determination only if it is arbitrary and capricious, so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational. *See Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc., and State Workers' Ins. Fund)*, 962 A.2d 14 (Pa. Cmwlth. 2008).

*W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021).

Here, based on the evidence presented at the April 29, 2021 hearing, WCJ Young granted the Termination Petition, concluding that Employer sustained its burden of proof based on the following factual findings:

> 9. Having had an opportunity to view Claimant's demeanor and comportment when he testified live via video before [WCJ Young], [WCJ Young] finds **Claimant to be neither credible nor persuasive** in this instance. In making this determination, [**WCJ Young**] **relies on the following**: **Claimant has not sought additional treatment with a surgeon** to further correct the original injury **and**, while he rates his pain high on a scale of one to ten, **he does not take any medication for the pain**.

> 10. [WCJ Young] has carefully reviewed the testimony of Dr. Iann[o]rone and finds the same to be credible and persuasive. In making this determination, [WCJ Young] relies on the following: Dr. Iann[o]rone is a surgeon who routinely performs the type of surgery that Claimant underwent. Dr. Iann[o]rone performed a thorough physical examination and reviewed relevant medical records. Dr. Iann[o]rone explained why the surgery to

11

repair the hernia did not result in any scarring, explained that Claimant's current complaints would not stem from the type of hernia that Claimant sustained, and explained that the ongoing testicular complaints of sensitivity are within the realm of what is considered normal with respect to the male anatomy.

11. [WCJ Young] has carefully reviewed the testimony of Dr. McCoy and, to the extent that Dr. McCoy's opinions are contrary to the credible opinions of Dr. Iann[o]rone, [WCJ Young] finds the same to be neither credible nor persuasive. In making this determination, [WCJ Young] relies on the following: **Dr. McCoy has not referred Claimant to a surgeon** to determine if additional surgery would be necessary **to address Claimant's continued complaints**. Dr. McCoy has relied upon, at least in part, Claimant's complaints of pain in rendering his opinions. As [WCJ Young] has found Claimant to be incredible in this regard, Dr. McCoy's opinion as to ongoing disability is incompetent.

2021 WCJ Dec. at 8 (Reproduced Record at 8a) (emphasis added).

WCJ Young weighed the credibility of Claimant and the medical witnesses to determine that Employer's evidence proved that Claimant's work-related injury ceased, or any remaining conditions are not related to his work injury. *See Baumann*; *see also Westmoreland Cnty.* Substantial record evidence supported WCJ Young's findings of fact and conclusions. Although WCJ Young did not reference the *Lewis* standard or make a specific finding that Claimant's condition changed since the 2019 WCJ Decision was issued, "by accepting [] [E]mployer's medical evidence of [Claimant's] full recovery as credible, [] WCJ [Young] [] properly ma[d]e a finding that [] [E]mployer [] met the standard set forth in *Lewis* [of] a change in Claimant's condition." *Baumann*, 147 A.3d at 1291 (quoting *Del. Cnty.*, 964 A.2d at 35) (emphasis omitted). Accordingly, the Board properly affirmed the 2021 WCJ Decision.

12

Based on the foregoing, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Derek Everage, :
                    Petitioner :
         :
        v. :
         :
City of Philadelphia (Workers' :
Compensation Appeal Board), : No. 631 C.D. 2022
               Respondent :

### O R D E R

AND NOW, this 23rd day of June, 2023, the Workers' Compensation Appeal Board's May 25, 2022 order is affirmed.

_____
ANNE E. COVEY, Judge